Good morning, Your Honor. May it please the Court, my name is Paul Knight. I'm representing the appellate, Gregory Sitzmann, in this matter. I did not represent Mr. Sitzmann down below. I came in the case after he was convicted by a jury and proceeded from that point on. I want to start right in with the arguments dealing with what I consider the concealment, the Brady and Giglio violations, the Nepu issues, and the concealment of evidence. And I'll, just as a couple of preliminary statements, this case kind of breaks down into three segments and it's helpful to sort of exclude, take out what isn't really at issue here. There's the Canadian gas tank smuggles in 98 and 99. We're not dealing with that. Then there's the extraterritorial smuggling, which is a separate issue, but we're really not dealing with that. But this case, and most of the argument it's going to be dealing with, was the few months in 2004 when the government took a run at George Jones, who was an associate of Mr. Sitzmann's. And that's really where the focus was at. As the Court may recall, that was a situation where an informant by the name of Terence Culligan was trying to approach Mr. Jones. In the course of that, during that time, Mr. Sitzmann was arrested in France and convicted and removed. He was staying in France for a long period of time and then further activity occurred. So in terms of, as I said, I'm going to be focusing in that particular area. When we got to that point, in 2004, in this case, the government had presented evidence about matters going from Texas to Detroit to Canada. They had matters dealing with drugs going from Bogota to Europe. But Mr. Sitzmann had never been in the District of Columbia. So in 2004, they're taking a run at Mr. Jones and... Who, as you just said, was his associate. It was his associate. He was a driver in 98 and 99. And then he had, in between there, 10 heart attacks. And that becomes pretty critical for the venue issue, doesn't it? Not really. Well, I don't believe so because those matters, none of those occurred anywhere near the District of Columbia. So Mr. Jones has then had 10 heart attacks, has had two open heart surgeries. He's living down in Florida. Mr. Terence Culligan, the government informant, comes and approaches him. Living down in Florida, but he wires the money into Washington. I'm sorry? But he monies, he wires the money into Washington. He does. And that is the only... So if, so unless your client had withdrawn from the conspiracy by then, venue is established. Well, or if this is even part of the conspiracy. Our position is this was never even part of the conspiracy with Mr. Culligan, that Mr. Culligan was setting this entire matter up and that when the government had no evidence, the case was originally indicted under a very strange theory by the government. And they tended to be the world drug police and they thought this was an indictment under 3238, which was, which if all the acts occur outside the United States, you can get venue here in the District of Columbia. Judge Friedman, when he told them it was 3237, all of a sudden they have to get venue in the District of Columbia. But as you recall from looking at the indictment, they're charging violations in the United States and then all over the world after that. So it was at the tail end of the case, all of a sudden the government's confronted. I got no evidence tying Mr. Sitzman to the District of Columbia. And that's what this whole focus is in 2004 and them trying to present evidence. And then a few issues, for example, what I'm, what I think is very critical in this matter is when the agent says, they initially took a run at Mr. Jones and said, we'll give you 20 kilograms and you give us $350,000. Well, it was almost a laughable proposition. Mr. Jones is living on $380 a month of welfare. He doesn't have any money. And it was like, oh my God, there was a surprise that he didn't have this money. So that matter is aborted. But when the government, and the only people that Mr. Jones is associated with are his friends, his associates, not Sitzman's. But when the government testified, where was this $360,000 coming from? They said from Sitzman's people. There's no Sitzman's people to provide this money. They were trying to link Mr. Sitzman to this through false testimony. When in fact the only three people who were going to be purchasers of the cocaine that was being produced by the government was Mr. Mesa, Mesa's friend, Bruce Frazee, who's also AKA Pops, and a third individual, Michael Maloney. Doesn't this argument work only if there's no legally sufficient evidence to support the proposition that Sitzman and Jones are working together in these drug deals? Well, there's no question they worked together in the drug deals in 98-99. The evidence is, our position is, there was no evidence that they were working together in 2004. That this is, that this matter is a government sting. You've got Mr. Colligan. But I thought your client, when he was arrested in 2004, had the names of all these people in his address book. Sure. But that doesn't make them his people.  Maybe not compelled, but it's a permissible view of the evidence. He had 10,000 names in phone books. Are every one of those people part of his organization? I think that's just a stretch beyond imagination. You concede, don't you, that if we felt, if we thought the evidence suggested otherwise that he was a co-conspirator, then there is sufficient venue in D.C. based on his helpful quality wiring of funds. But it turns on whether we conclude that Jones was a co-conspirator with Sitzman. Whether there's evidence. I recognize you're disputing that. Well, my argument right now is the government withheld information which would tend to show that Mr. Sitzman was not a conspirator. That's the Giglio and the Pew issues that you cannot prevent and take that evidence away from him. I'm sorry, what is the evidence withheld? I thought your Brady argument is focused on Jones' grand jury testimony and your, is it NAPU? Your NAPU argument is focused on what we were just talking about, which is the Sitzman's people reference. Yeah, exactly. In other words, the government resisted turning over the grand jury testimony of George Jones. He's been dead for four years. And you're saying that testimony would have tended to show no conspiracy at the relevant time between Sitzman and Jones? That's right. When Jones is asked in his own words, tell me how you got into this position. How did you get arrested? And what does he start? He starts in January of 2004, says, I approached Mr. Culligan and asked him if he could give me anything to work with. The grand jury testimony is Jones says, in 2004, Sitzman promised to supply multi-kilogram quantities of cocaine to Jones. Sounds pretty inculpatory. That is the statement that was in the plea that the government typed up, the script that the government typed up in 2004 when he pled guilty. I'm not disputing that evidence is there. It came from Culligan. It was all hearsay. Culligan's dead. He can't testify to any of this. The government is relying on what Culligan is saying because Culligan's waiting to be sentenced. He's trying to set up an opportunity to get sentencing credit. But what I'm pointing out is the government withheld the fact when they said he was trying to sell the drugs to Sitzman's people. There's no evidence that these are Sitzman's people. The testimony in the grand jury, which I didn't get until the sentencing, showed that the drugs were going to be distributed to three associates of Mr. Jones. You can't withhold that information. That's the defense that we're trying to present, and yet the government is trying to show it's Sitzman, it's Sitzman, it's Sitzman because they've got nothing to link him to this case. He's never been in the District of Columbia. They've got a bootstrap on that phone call to try to get him in as make that part of a conspiracy. So by hiding that evidence, not turning it over and preventing us, when the court, they hid the fact that Jones, there's some tapes where Jones said he was going to share the money, but the grand jury testimony showed he was not going to share it. I presume you wanted to reserve some time for this. I did, I'm sorry, unless my colleagues have any further questions. How do you answer the failure to preserve the venue objection? Well, I think the venue objection was preserved because it was cut off. In other words, when the trial counsel was coming around to getting into the venue issue, the government jumps up and says, Your Honor, he's raising venue. And then they cut him off from preventing any further questions. So the venue issue was teed up in front of the judge during the case in chief. I thought he was essentially consenting to it at the middle of the trial. I'm sorry?  Well, I don't think he was consenting to it. He certainly wasn't objecting to it, and it came up more than once. It came up more than once. At one point, this is that the government objects, the government drafts an instruction, and the trial counsel does not object to the instruction that venue was proper. I can't defend trial counsel at all in this particular case. That was why I got into the ineffective assistant issue. It was not properly raised. Well, I think it was raised before the court, and the issue was teed up at that time. At what time? During the case in chief, during the cross-examination of Buss, that when he was getting into the venue issues, that that matter was raised and cut off by the government. He's raising any further questioning about that at that time. You mean because the government's... I'm going to make sure I understand. I realize this is not you, so anything that sounds a little perplexing of my size... No, I understand. This case is perplexing at every turn. Okay, well, but you surely don't mean to suggest that merely because the government jumped up and said something that counsel should then kind of shrink away and not raise an objection that should be properly raised? The objection could have been more strongly raised. I can't deny that, Judge. Okay, gotcha. Thank you. Thank you. We'll give you a minute back. Thank you. I'm sorry. Excuse me. The government now. Good morning. Good morning, Your Honor. Thank you, and may it please the court. My name is Dan Lenners, and I represent the United States. The only way to find a Brady violation in this case is to ignore entirely the fact that George Jones, during his grand jury testimony, adopted the proffer that he made in support of his plea, in which he admits that he was looking to receive cocaine from the defendant, Sitzman, prior to January 2004, and that in January 2004, when it became clear that Sitzman could not deliver upon that promise, he turned to Terrence Colligan. Not only did Jones twice adopt this testimony and verify its truth as part of his grand jury testimony, but he made clear that any parts of his plea proffer that he wasn't sure about, he wasn't willing to verify the truth of, and that's at Appendix 477 to 478, where he takes issue with a statement about how much cocaine he had smuggled to Chicago in the 90s. So once he adopted this plea proffer as part of his grand jury testimony, there is simply no Brady violation here. In terms of venue, the defendant's counsel failed to object to venue prior to trial, and thus waived any legal challenge to venue. This court has made clear that you have to raise legal challenges to venue prior to trial if not they're waived. During trial, he did not meet the hair factors for having the jury be instructed to find venue. As Judge Edwards noted, the only questioning was about venue entrapment, and when the government asked the court to give an instruction that it had found venue as a matter of law, defense counsel agreed that venue was a legal question and did not object to that instruction. And so there was no basis for instructing the jury that it had to find, as a factual matter, that the Jones wire transfer to D.C. was part of the same conspiracy. What do you think is the best evidence on your side of it in the grand jury? It looks innocuous to me. I mean, suggesting it, his testimony was indicating there was a real arrangement and agreement. It doesn't really look that clear to me. It looks like it was much of nothing. In the grand jury... It looks like a guy, let me tell you what my view was, it looks like a guy who has fanciful notions, but the defendant wasn't agreeing to any of it, wasn't suggesting, sure, we've got a deal. What are the words that are suggesting that? Your Honor, the best evidence that George Jones was part of an ongoing conspiracy with Greg Sitzman in February of 2004 does not come from the grand jury. It comes from the body wire recordings that occurred on March 11, 2004, between Jones and Colligan. At that time, Jones said that he intended to split the proceeds of the sale of the cocaine he was getting from Colligan 50-50 with Sitzman, 7-50 to himself. Who did he say that to? To whom? He said that to Terence Colligan, who... What does that have to do with Sitzman? It shows that Jones... That doesn't show that Sitzman's agreeing to anything. Jones and Sitzman had a lengthy conspiratorial relationship. See, that's what I'm trying to understand. So you're riding the fact that they had a past arrangement to hook in in 2004. What they're suggesting on the brain is that the grand jury testimony essentially shows that Sitzman wasn't a part of any meaningful arrangement then. When you're trying to tie this whole venue and everything in to the 2004, they're saying the grand jury shows there was no connection with Sitzman on any consequence in 2004. Your response to me then is, well, but in the 1990s, they had a strong connection. It's not just that, Your Honor. They're saying that the grand jury is Brady because it somehow undercuts the assertion that Jones was looking for cocaine from Sitzman in late 2003 and early 2004. In the grand jury, Jones expressly adopted his plea proffer in which he said that's what he was doing. The fact that there was this ongoing conspiratorial relationship past the 90s is shown by the fact that Jones intended to split the proceeds of his cocaine sale with Sitzman, that he said in the same body wire that that's just what they typically did. Whenever Greg got $100, he gave me $50, and whenever I got $100, I gave him $50. Sitzman stored his drug smuggling bags, his drug wrapping packaging, his personal documents at Jones' house. Sitzman used Jones' house in the early 2000s. I understand all that. I'm just trying to understand what was really going on in 2003-4. You're saying the grand jury testimony includes his adoption of the plea agreement, which would solidify your claim. That is, when he said, yes, I adopt that, there was enough in there to make the connection you want. That's your argument? My argument is that... Because otherwise it isn't there. My argument is not that the grand jury testimony proves there was a connection. My argument is that by adopting the plea proffer, he admitted to the facts that counsel is saying the government suppressed. Right. He admitted to the facts. That's what I'm asking. It's the reference to the plea proffer. Right. Which really is the only thing that doesn't appear. Which he twice adopted as part of his grand jury testimony. Right. And there were many other circumstances showing that Jones' relationship did not, as Sitzman claims, end in 2000, but was ongoing into 2004, and thus supports both the propriety of venue here in D.C., as well as the fact that there's no Brady violation. If there are no further questions... Could I just ask you about the co-conspirator conviction? You're not defending the admission of that evidence, are you? No, Your Honor, we're not. It seems like it's a pretty obvious error. It seems like it may have been intentional, and the prosecutor came back to it three times in a row. I assume for a case of this magnitude, it would have been a pretty experienced prosecutor. It was not intentional, Your Honor. The prosecutor, as he explained in the post-trial pleadings, was merely trying to complete the timeline and complete the story of what happened to George Jones after he arrested to show that he had not escaped scot-free. Which could have very easily been done by the final question, establishing that Jones was then dead. It could have been done otherwise, and the government is not defending that it was an error to ask that question, but it wasn't some sort of intentional attempt to manipulate the process, and it was plainly harmless, given that that's the only time it came up during a five-week trial. It was plainly harmless? Yes, Your Honor. Really? It was repeated over and over again? No, Your Honor. It was repeated two or three times? It was asked during the questioning one time, was Jones convicted of conspiring to possess with the intent to distribute five kilograms or more of cocaine? Yes. That was the one time that was stated during trial, and the district court who oversaw the trial found that this could not have harmed Sitzman, given that it was not repeated during closing statements. No, no, it wasn't repeated during closing statements, but that colloquy... It was three consecutive questions in one exchange? Yes. As I understood, there was only one question that went to the improper admission of the guilty plea. The other two were unrelated topics, but weren't specifically that he had been convicted of possession with intent to distribute. Question, did Jones plead guilty? Answer, he pled guilty. Question, what did he plea? Answer, and he signed a plea agreement. Question, okay, and did he plead guilty to conspiracy to distribute and so on? Answer, that's correct. Yes, Your Honor, I'm sorry. I didn't understand. That's about as non-harmless as you can get. I disagree, Your Honor. I know you disagree, you have to, but we both have the same concern. How in heaven's name did this come in and do this, an experienced prosecutor doing this three times, knowing this is absolutely error? Your Honor, I... Prejudicial error? I'm not defending that it was error, but harmless in terms of it being a five-week trial. It was not repeated during closing statement. Other courts I have looked at... Who's the burden on the harmlessness question? That's a difficult question, Your Honor. The Fifth Circuit has said that it's... We're not in the Fifth Circuit. I think I've written an opinion. I think there's some other opinion that says the burden's on the prosecutor. Why must we have no reasonable doubt? I couldn't find any opinions in the circuit. You want me to send you one? I'm sorry. I did not find any opinions in this circuit saying the burden on a illegal... or improper reference to a co-conspirator's guilty plea. Oh, no, not that particular one. There's error in this context. The burden is what? Beyond a reasonable doubt on the government. Even if that's the burden, Your Honor, the government can edit here. Unless you show me some contrary precedent. The court did not like my citation to the Fifth Circuit. That's right, because we have our own on beyond a reasonable doubt on harmlessness in a criminal context. Burden's on the government. And that's met here, Your Honor, by the fact that it was only mentioned during this one colloquy. It was not repeated during trial. It was a lengthy trial. Other courts have found more egregious references, repeated references, to multiple co-defendants' guilty pleas to be harmless in a similar context. The evidence that Sitzman engaged in this multi-decade international drug smuggling conspiracy was overwhelming. And why do you mess up a case? That's what's so stunning. I mean, that's what's really kind of perplexing. I don't mean to be patronizing or sound like I'm lecturing you, but it really is perplexing that a prosecutor would pull a stunt like this three times. We both caught it. Clear error in a case in which you think there's overwhelming evidence. You know, we do have a system with rules. Why don't we follow it? I agree that it was error, Your Honor, that we discussed this with the trial prosecutor. The trial prosecutor indicated in his post-trial pleadings that he was trying to complete the story on Jones and also was thinking of Jones as a cooperator. And in the cooperator context, one does put in their plea agreement. It was error in this case to do so, but that error was harmless beyond a reasonable doubt even if it is the government's burden. Harmlessness is a pretty tough sell. I thought your answer to that question would have been that this wasn't preserved below and therefore we're up on plain error and it's the other side's burden to show a very substantial degree of prejudice for that reason. That should have been my answer, Your Honor. He's giving you an opening. I was surprised you were going with me on harmlessness. I like to travel the road if you're willing to go. It was not preserved below. It is before this Court on plain error and it doesn't meet the standard for plain error. Thank you. If there are no further questions. Mr. Knight, we'll give you back a minute. Thank you. The point I wanted to make is there is evidence that's bad against Sitzman, but what I'm complaining about under the Brady and the Pooh argument is the government has a duty to turn over the good stuff too. That is the argument. What I'm trying to show is we were deprived of that evidence which is so important. I do want to emphasize about the conviction that it's about as clear as it can possibly be that a prosecutor cannot introduce a conviction. It's prosecution 101. That was the government seals George Jones' court file. They completely take it out of the record. So we don't know and I was surprised in 2013, two years after the trial, to learn that there was a plea bargain, that he was charged with two separate conspiracies, that the conspiracy in this one only ran from January until March which is a critical factor in this whole case. So by sealing and taking away, the government cannot just seal up the defense to be able to review. Thank you very much. Thank you. Mr. Knight, you were appointed by the court to represent the appellant in this case and we thank you for your assistance. The case is submitted.
judges: Griffith, Katsas, Edwards